IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**TRAE JAVAR COMPTON,**

      **Plaintiff,**

**v.**                                                                 **Case No. 5:15cv150**

**STATE OF WEST VIRGINIA;**
**TERRY O'BRIEN, Retired;**
**KEVIN PEARCE, Officer;**
**MICHAEL BLEDSOE, Officer;**
**JERALD RIFLE, Lieutenant;**
**JOHN HUNT, Officer; SHANE**
**HIXENBAUGH, Correctional**
**Officer; WANDA SINES, RN;**
**TREVOR GEORGE, Officer;**
**KENNETH CRADDOCK, Discipline**
**Hearing Officer; CHRISTOPHER**
**MEYER, P.A.; TERRANCE GRASSER,**
**Officer,**

      **Defendants.**

## REPORT AND RECOMMENDATION

This matter is assigned to the Honorable Frederick P. Stamp, United States

District Judge, and it is referred to the undersigned United States Magistrate Judge for

submission of findings and a recommendation for disposition, pursuant to 28 U.S.C. §

636(b)(1)(B).  Pending before the court is a Motion to Dismiss or, alternatively, Motion

for Summary Judgment [ECF No. 113], and the plaintiff's Response in Opposition. ECF

No. 124.

## Procedural History

This matter is proceeding on the plaintiff's Amended Complaint [ECF No. 51],

that alleges that he was subjected to excessive force on October 8, 2015, while officers

escorted him to a holding cell in the Special Housing Unit at USP Hazelton, which is located in Bruceton Mills, West Virginia. The plaintiff further alleges that he did not receive appropriate medical care after being placed in restraints that were extremely tight. In addition, the plaintiff alleges that he was disciplined based upon an incident report that he maintains contained false information. Finally, he alleges that his right to pursue administrative grievances and to access the courts was hindered. For relief, the plaintiff seeks compensatory damages, punitive damages, and criminal charges against the correctional officers.

The defendants' Motion to Dismiss or for Summary Judgment asserts that the plaintiff failed to exhaust the available administrative remedies. In addition, the defendants assert that the plaintiff has not established that the administrative grievance process was unavailable to him nor has he adequately explained why he failed to administratively exhaust his allegations.  Alternatively, the defendants allege that the plaintiff has not pleaded nor can he establish a cognizable <u>Bivens</u> lawsuit. More specifically, the defendants allege that the plaintiff: (1) has not pleaded the type of particularized personal or supervisory involvement necessary to support a viable <u>Bivens</u> claim against any of the individual defendants; (2) defendant Christopher Meyer, an FCC Hazelton physician assistant is employed by the United States Public Health Service and is absolutely immune from personal liability for the plaintiff's medical care; (3) the plaintiff has not adequately pleaded nor can he establish a viable excessive force claim; (4) the plaintiff has  not adequately pleaded nor can he establish that any individual defendant was deliberately indifferent to a serious medical need; and (5) the plaintiff's vague and unsubstantiated suggestion that he was falsely accused of

misconduct and subsequently disciplined cannot support a cognizable Bivens claim. The undersigned will address these defenses as necessary *infra*.

### Legal Standard

A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); See Also Martin at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief."  Conley at 45-46.  In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly at 554-55. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de

Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003).  In so doing, the complaint must

meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal,

where it held that a "claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  Thus, a well-

pleaded complaint must offer more than "a sheer possibility that a defendant has acted

unlawfully" in order to meet the plausibility standard and survive dismissal for failure to

state a claim.  Id.

        Plaintiff is proceeding *pro se* and therefore the Court is required to liberally

construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner,

404 U.S. 519, 520-1 (1972) (per curiam); Erikson v. Pardus, 551 U.S. 89, 94 (2007);

Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978); Gordon v. Leeke, 574 F.2d 1147 (4th

Cir. 1978). While *pro se* pleadings are held to a less stringent standard than those

drafted by attorneys, Haines, 404 U.S. at 520, even under this less stringent standard, a

*pro se* complaint is still subject to dismissal. Id. at 520-21. The mandated liberal

construction means only that if the Court can reasonably read the pleadings to state a

valid claim on which the plaintiff could prevail, it should do so. Barnett v. Hargett, 174

F.3d 1128 (10th Cir. 1999). However, a court may not construct the plaintiff's legal

arguments for her. Small v. Endicott, 998 F.2d 411 (7th Cir. 1993). Nor should a court

"conjure up questions never squarely presented." Beaudett v. City of Hampton, 775

F.2d 1274 (4th Cir. 1985).

    B.  Motion for Summary Judgment

        Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary

judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party."  Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986).  The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist.  Anderson v. liberty lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact.  Celotex at 323.  Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita Electric Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The nonmoving party must present specific facts showing the existence of a genuine issue for trial.  Id.  This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial."  Anderson at 256.  The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment.  Id. at 248.    To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]."  Id.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987).  Such evidence

must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation.  Anderson at 248.  Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."  Matsushita at 587.

### Analysis

A.  Failure to Exhaust Administrative Remedies

Under the Prison Litigation Reform Act ("PLRA"), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaustion of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted prior to filing a complaint in federal court. See Porter , 534 US at 524 (citing Booth, 532 US at 741) (emphasis added). Moreover an inmate may procedurally default his claims by failing to follow the proper procedures. See Woodford v. Ngo, 548 U.S. 81 (2006) (recognizing the PLRA provisions contain a procedural default component).

The Federal Bureau of Prisons ("BOP") makes available to its inmates a three level remedy process if informal resolution fails to achieve sufficient results. See 28 C.F.R. § 542.10, et seq.  Within 20 calendar days of the date of the occurrence on which the complaint is based, an inmate may file a written complaint with the institution

6

on the proper form which is known as a BP-9. <u>See</u> 28 C.F.R. § 542.14. If the inmate is not satisfied with the institutional Warden's response, he may appeal to the Regional Director within 20 calendar days of the Warden's response using a BP-10. <u>See</u> 28 C.F.R. § 542.15(a). Finally, if the prisoner has received no satisfaction, he may appeal to the Office of General Counsel by filing a BP-11 form within 30 days of the date the Regional Director signed the response.[1]  An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels.  28 C.F.R. § 542.10-542.15; <u>Gibbs v. Bureau of Prison Office, FCI</u>, 986 F.Supp. 941, 943 (D.Md. 1997).

The evidence provided by the defendants establishes that the plaintiff has filed a total of 38 formal BOP administrative grievances. ECF No. 11-1 at ¶¶ 11-20. He filed 11 such grievances at other federal correctional facilities before he arrived at USP Hazelton. <u>Id.</u> ¶ 13. The plaintiff filed one administrative grievance at USP Hazelton to address injuries that he allegedly sustained when he fell in the shower. <u>Id.</u> § 14. He filed no other administrative grievances while he was incarcerated at USP Hazelton. <u>Id.</u> ¶¶ 11-20.

The plaintiff arrived at USP Lewisburg on December 28, 2015. <u>Id.</u> at ¶ 8. Nearly seven months later, he filed the first of two formal administrative grievances in which he

---

[1] "If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received.  Once filed, response shall be made by the Warden or CMM within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days...If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institutional level, 30 days at the regional level, or 20 days at the Central Office level. Staff shall inform the inmate of this extension in writing. Staff shall respond in writing to all filed Requests or Appeals.  If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

alleged misconduct by USP Hazelton employees. Id. ¶¶ 18-19. The first, was submitted on July 25, 2016 and was assigned grievance number 870274-R1, which was filed in the BOP's North-East Regional Office to address a staff complaint related to events that he alleged occurred while he was incarcerated at USP Hazelton on October 8, 2015, December 3, 2015, and December 10, 2015. Id. at ¶ 18. This grievance was rejected because the plaintiff submitted his request directly to a BOP Regional Director without first pursuing his grievance at his federal corrections facility as required by federal regulations and BOP policy.[2] The plaintiff never appealed or resubmitted the grievance. Id.

The second grievance filed after the plaintiff arrived at USP Lewisburg which addressed alleged staff misconduct at USP Hazelton was filed on September 7, 2016, and was assigned grievance number 875248-F1. The grievance was rejected as untimely. As previously noted, an inmate generally must present his initial administrative complaint within 20 days of the alleged misconduct that forms the basis for his

---

[2] There are exceptions to the requirement that an inmate initially file a grievance at the institution level.  Particularly, 28 C.F.R. § 542.14(d)(1) provides:

> Sensitive issues.  If the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director.  The inmate shall clearly mark "Sensitive" upon the Request and explain, in writing, the reason for not submitting the request at the institution.  If the Regional Administrative Remedy Coordinator agrees that the Request is sensitive, the Request shall be accepted.  Otherwise, the Request will not be accepted, and the inmate shall be advised in writing of that determination, without a return of the Request.  The inmate may pursue the matter by submitting an Administrative Remedy Request locally to the Warden.  The Warden shall allow a reasonable extension of time for such a resubmission.

grievance. 28 C.F.R. § 542.14(a). However, this deadline can be extended if the inmate justifies the delay by presenting a valid situation that prevented him from promptly submitting his request. 28 C.F.R. § 542.14(b).  The plaintiff was advised that his grievance was "extremely untimely" because it related to events that allegedly occurred at a different correctional facility nine months before he submitted the grievance. ECF No. 114-1 at p. 22. The plaintiff never appealed or resubmitted the grievance. ECF No. 114-1 at p. 7, ¶ 19. Therefore, it is clear that the Plaintiff never exhausted his administrative grievances with respect to his allegations of either excessive force or denial of medical attention with respect to the events he alleged occurred on October 8, 2015, at USP Hazelton.

In addition to his claims of excessive force and medical care, the plaintiff's amended complaint also raises issues with respect to two disciplinary reports which were issued as the result of his actions on October 8, 2015. Although the plaintiff provides no detail, the evidence presented by the defendants establishes he was disciplined for possessing a weapon (Incident Report 2770071)[3] and manipulating his handcuffs from behind his back to the front of his body (Incident Report 2770054)[4]. ECF No. 114-1 at 39.

---

[3] The plaintiff was charged with Code Violation 104, and his disciplinary hearing was conducted on October 21, 2015, and the disciplinary hearing officer issued his/her report on November 4, 2015.  The plaintiff admitted possessing a weapon and was sanctioned with 40 days loss of good conduct time, 7 days of disciplinary segregation and 90 days of loss of visitation. ECF No. 114-1 at 29.

[4] The plaintiff was charged with Code Violation 299 , Disruptive Conduct High. The disciplinary hearing was conducted on October 21, 2015, and the disciplinary hearing officer issued his/her report on November 4, 2015. The plaintiff admitted to moving his handcuffs from behind his back to the front and was sanctioned with 27 days loss of good conduct time, 7 days of disciplinary segregation and 90 days loss of visitation. ECF No. 114-1 at 29.

With regard to disciplinary actions, the exhaustion of administrative remedies is initiated by first filing an appeal of the disciplinary action with the Regional Office within 20 days of receiving written notification of the disciplinary action. See 28 C.F.R. § 542.14(d)(2) (emphasis added).  If unsatisfied with that response, the inmate may file an appeal with the Central Office within 30 days of the date the Regional Director signed the response. Id. Where an appeal is rejected at the Regional Level, and the inmate is not given the opportunity to correct the defect and resubmit, the inmate may appeal that rejection to the Central Office.  See 28 C.F.R. § 542.17(c).  The Central Office may affirm the rejection, may direct the submission be accepted at the lower level, or may accept the submission as filed. Id. "Appeal to the General Counsel is the final administrative appeal." See 28 C.F.R. § 542.15(a).  The plaintiff has never filed any grievance related to these disciplinary proceedings. ECF No. 114-1 at p. 7, ¶ 20.

The plaintiff filed his original complaint in this matter on November 24, 2015, when he was still confined at USP Hazelton. ECF No. 1. It was signed on November 18, 2015, 41 days after the October 8, 2015, events giving rise to the complaint. The plaintiff acknowledged that there was a grievance procedure at USP Hazelton and also acknowledged that he did not file a grievance concerning the facts relating to his complaint. By way of explanation, the plaintiff noted that "staff case manager, counselor, unit manager [won't] give the one to exhaust my administrative remedies so there will be no filing on staff." ECF No. 1 at p. 4. The plaintiff subsequently amended his complaint on several occasions and filed his most recent amended complaint on November 28, 2016. ECF No. 51. Although he listed his present location as USP Hazelton, it is clear that he was actually at USP Lewisburg. ECF No. 51-2.  In his

amended complaint, the plaintiff alleges that he filed grievances regarding the facts related to his complaint and identified Remedy ID numbers 875248 and 87000274 addressed above, and which he acknowledges were filed at USP Lewisburg. Although it is far from clear, the plaintiff appears to allege that prison officials at USP Hazelton retaliated against him in violation of 28 C.F.R. § 40.9 which prohibits reprisals for the good faith use of or good faith participation in the grievance procedure.

The undersigned acknowledges that despite the fact that the Supreme Court has stated that it "will not read futility or other exceptions into statutory exhaustion requirements," Booth, 532 U.S. at 741, n.6, several courts have found that the mandatory exhaustion requirement may be excused in certain limited circumstances. See Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004) (defendant may be estopped from asserting exhaustion as a defense when defendant's actions render grievance procedure unavailable); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (summary dismissal for failure to exhaust not appropriate where prisoner was denied forms necessary to complete administrative exhaustion); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (remedy not available within meaning of § 1997(e)(a) when prison officials prevent a prisoner from utilizing such remedy); Aceves v. Swanson, 75 F. App'x 295, 296 (5th Cir. 2003) (remedies are effectively unavailable where prison officials refuse to give inmate grievance forms upon request).  Indeed, the Fourth Circuit has held that "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it."  Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

Furthermore, a number of courts of appeals have held that prison officials' threats of violence can render administrative remedies unavailable.  See, e.g., Turner v. Burnside, 541 F.3d 1077, 1085 (11th Cir. 2008); Kaba v. Stepp, 458 F.3d 678, 686 (7th Cir. 2006); Hemphill v. New York, 380 F.3d 680, 688 (2d Cir. 2004).  But see Larkin v. Galloway, 266 F.3d 718, 723-24 (7th Cir. 2001) (failure to exhaust not excused because plaintiff was afraid of retaliation).  For threats or intimidation to render administrative remedies unavailable, they must typically be substantial and serious enough that they would deter a similarly situated prisoner of ordinary fitness from pursuing administrative remedies.  See Turner, 541 F.3d at 1085; Kaba, 458 F.3d at 684-86; Hemphill, 380 F.3d at 688.

Here, although the Plaintiff makes a vague suggestion in his original complaint that staff at USP Hazelton prevented him from filing grievances to address his concerns, he offers no detail or specificity to support his allegation. In his amended complaint, the plaintiff attached an informal remedy that he filed at USP Lewisburg in which he stated that "while in the custody of Hazelton USP, [he] was denied BP 8, 9, or 10 to exhaust [his] administrative remedies also denied the right to send out legal mail. ECF No. 51-1 at p. 1. The sweeping generality provided by the plaintiff and "naked assertions without any specificity or evidentiary support" cannot sustain his allegation that he could not pursue his grievances at USP Hazelton. Salazar v. Holder, No. 3:14cv23, 2015 WL 574800, at *5 (N.D.W. Va. Feb. 11, 2015).  Moreover, the record in this case clearly contradicts his allegation that he was prevented from sending legal mail. On November 1, 2015, the plaintiff filed his original complaint, an IFP motion, a Prisoner Trust Account Report and a Consent to Collection. ECF Nos 1-4. On December 7, 2015, he filed a

Notice of Change of Address and a Motion to Appoint Private Investigation. ECF Nos. 9, 10.  Finally, on December 28, 2015, the plaintiff filed a motion for an extension of time. ECF No. 13. Each of these docket entries were accomplished by the plaintiff sending legal mail to this court while he was incarcerated at USP Hazelton. In addition, to the extent that the plaintiff may be alleging that he feared retaliation if he attempted the administrative remedy process, thereby relieving him of the obligation to exhaust his administrative remedies, the undersigned finds that he has presented no claim that is substantial and serious enough that would deter a similarly situated prisoner of ordinary fitness from pursuing administrative remedies.  Rather, the plaintiff makes a mere conclusory statement without substantive facts.

Furthermore, even if the plaintiff were actually prevented from pursuing his grievances while he was incarcerated at USP Hazelton, he left there on December 28, 2015. He arrived at USP Lewisburg on that same date. The plaintiff gives no reason for waiting nearly seven months to begin the administrative process. Moreover, the plaintiff filed six different administrative grievances between April 13, 2016, and June 2016, to address matters at USP Lewisburg before he asserted any allegations related to USP Hazelton. ECF No. 114-1 at pp. 20-22.

Therefore, this matter should be dismissed for failure to exhaust administrative remedies.  However, even if the Court were inclined to find that the plaintiff should be excused from exhaustion, his complaint fails to state a claim upon which relief can be granted.

B.  <u>Excessive Force</u>

In general, the Eighth Amendment prohibits "cruel and unusual punishment." Farmer v. Brennan, 511 U.S. 825 (1994).  To comply with the Eighth Amendment, prison punishment must comport with "the evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102 (1976). However, while courts should give deference to a prison official's determination of what measures are necessary to maintain discipline and security, "the unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 321-22 (1986). For a plaintiff to prove a claim of excessive force, he must first demonstrate that "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation."  Hudson v. McMillian, 503 U.S. 1, 8 (1992) (quoting Wilson v. Seiter, 501 U.S. 294, 298, 303 (1991)).  Second, he must show that prison officials inflicted unnecessary and wanton pain and suffering. Id. at 6.

With regard to prison disturbances, whether unnecessary and wanton pain and suffering was inflicted "ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21. To determine whether an official acted maliciously and sadistically, the following factors should be balanced: (1) "the need for application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of the injury"; (4) "the threat reasonably perceived by the responsible official"; and (5) "any efforts made to temper the severity of a forceful response." Id. at 321; Williams v. Benjamin, 77 F.3d 756, 762 (4th Cir. 1996). The Supreme Court has made it clear that the core judicial inquiry in an excessive force

claim is not "whether a certain quantum of injury was sustained, but rather, whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (citation and internal quotation marks omitted). Therefore, the extent of injury is one factor to consider, but it "does not end [the analysis]."  Hudson, 503 U.S. at 7.

In the instant case, there appears to be no dispute that on October 8, 2015, at approximately 9:50 am, BOP staff members, including defendants Trevor George and Kevin Pearce, were conducting random searches of cells in the USP Hazelton Special Housing Unit ("SHU"). Moreover, there appears to be no dispute that daily random searches are required by BOP policy. On that day, the cell assigned to the Plaintiff and another inmate, identified herein as J.L. was searched. To facilitate the search, the plaintiff and J.L. were each placed in separate holding cells in the SHU. The plaintiff was in handcuffs with his arms restrained behind his back. Upon searching the cell, defendant Pearce found a handcrafted weapon that appeared to be a sharpened chicken bone with a bed sheets wrapped around it to create a handle. Officer Pearce then prepared an incident report to charge the plaintiff with possessing a weapon in violation of BOP policy. ECF No. 114-3.

As defendant George was leaving the area, he walked past the holding cell where the plaintiff was located. Defendant George maintains that the plaintiff started yelling and threatening him and another BOP employee. According to defendant George, the plaintiff stated: "this won't be the last you see of me. I got something for your ass when I get out." ECF No. 114-2 at 2. In addition, according to defendant George, while he was yelling, the plaintiff also manipulated his handcuffs. More

specifically, although the plaintiff's hands were originally restrained behind his back, he stepped over and through his arms, bringing the handcuffs to the front of his body. Defendant George immediately notified the supervising SHU Lieutenant, defendant Riffle, that the plaintiff had manipulated his restraints and engaged in verbally abusive and combative behavior. Defendant Riffle arrived; began talking to the plaintiff and instructed him to again place his hands behand his back. The plaintiff complied. Defendant George then left the area to prepare an incident report charging the Plaintiff with threatening bodily harm and tampering with a security device in violation of BOP policy. ECF No. 114-2 at p. 6.

Staff then attempted to escort the plaintiff to a larger holding cell to perform a visual search of the plaintiff's body. ECF No. 114-4 at p. 4, ¶ 16. The plaintiff became passive aggressive and refused to walk on his own. Id. In addition, according to officers who escorted the plaintiff during the cell change, the plaintiff was verbally abusive and physically aggressive. As described by John Hunt, Senior Officer Specialist, the plaintiff yelled obscenities and kicked his legs. ECF No. 114-5 at p. 2. Once proper control was regained, the plaintiff was placed in ambulatory restraints and paper clothes due to his continuously aggressive and disruptive behavior. Id. Michael Bledsoe, another Senior Officer Specialist, confirms the events as described by John Hunt, and specifically notes that he was responsible for controlling the plaintiff's head and upper body while the ambulatory restraints were applied. ECF No. 114-6 at 2.

Federal Regulations and BOP policy expressly authorize BOP employees to apply physical restraints necessary to gain control of an inmate who appears to be dangerous because the inmate becomes violent or displays signs of imminent violence.

28 C.F.R. § 552.20. However, BOP employees are cautioned to use only the "amount of force necessary to gain control of the inmate, to protect and ensure the safety of inmates, staff, and others, to prevent serious property damage and to ensure security and good order." 28 C.F.R. § 552.20.  Furthermore, BOP employees may not use brutality, physical violence, or intimidation toward inmates. ECF No. 114-4 at p. 10.

Where an inmate presents an immediate threat, staff may temporarily apply restraints to prevent the inmate from hurting himself, staff or others, and/or to prevent serious property damage. 28 C.F.R. § 522(d). In addition, federal regulations and BOP policy authorize staff to apply restraints to an inmate who continues to resist after staff achieve physical control of the inmate. 28 C.F.R. § 533,33(e); ECF No. 114-4 at p. 15. BOP policy expressly recognizes that the "proper application of restraints may result in some discomfort." ECF No. 114-4 at pp. 15-16. However, restraints may not be used in a manner that causes "unnecessary physical pain or extreme discomfort." 28 C.F.R. § 552.22(h)(3).  Restraints should remain on an inmate until self-control is regained. 28 C.F.R. § 552.22(f). Staff should look for a pattern of non-disruptive behavior over a period of time as an indication that the inmate has regained self-control and is no longer a disruptive threat. ECF No. 114-4 at p. 19. Finally, if an inmate who is being forcibly restrained refuses to move to another area of a correctional facility on his own, staff may physically move the inmate to the appropriate destination, for example by lifting and carrying the inmate. 28 C.F.R. § 552.22(e).

When an inmate is placed in ambulatory restraints[5], BOP employees are required to check the inmate every 15 minutes, both to ensure that the restraints are not

---

[5] Ambulatory restraints are approved soft and hard restraint equipment that allow an inmate to eat, drink, and address basic human needs without staff intervention. ECF No. 114-4 at 19.

hampering circulation and for the general welfare of the inmate. 28 C.F.R. § 552.24(d). Additionally, a Lieutenant is required to check the inmate every two hours to determine if the use of restraints has had the required calming effect and so that the inmate may be released from the restraints as soon as possible. 28 C.F.R. § 552.24(e).

The logs supplied by the defendants establish that the required 15 minute checks by staff and two hour checks by a Lieutenant were made. ECF No. 114-4 at pp. 32-40. As documents by those records, and in particular the Lieutenant checks, the plaintiff did not begin to show signs of calming down until 5:30 AM on October 9, 2015, and the leg iron restraints were removed. ECF No. 114-4 at 34. At 7:30 AM on the 9th, the plaintiff was "calm and compliant, showing signs of respect toward staff, communication was good and positive. Id. at p. 35. Therefore, the plaintiff was taken completely out of restraints. Id.

The evidence of record establishes that the defendants adhered to required protocol in their actions on October 8, 2015 and continuing into October 9, 2015. The undersigned recognizes that the plaintiff alleges that he was punched and kicked "off camera." However, each of the defendants denies this allegation. In addition, the medical records do not support his allegation.

The plaintiff was seen by a nurse on October 9, 2015 at 11:23 AM, for complaints of exacerbation of chronic lower back pain. The notes from that clinical encounter indicate that the plaintiff appeared well and was oriented as to person, place and time. On examination, he had a small abrasion to his right lateral shoulder. His head, face, neck, oral mucosa, as well as bilateral hands, arms, legs below the knees and feet were examined and no further injuries were noted. In addition, the plaintiff denied any other

injuries at that time. ECF No. 114-7 at pp. 41-42. On October 9, 2015, the plaintiff was seen by the same nurse at 9:29 AM. He reported right hip tenderness and rated his pain as a four on a one to ten scale. The plaintiff indicated that the injury was caused by the belly chain. His right shoulder abrasion appeared the same as yesterday. Two raised bruises approximately 4cm x 1cm were observed just above the right iliac crest[6] which the plaintiff reported were tender to palpation. The plaintiff was discharged to his housing unit with convalescence. ECF no. 114-7 at pp. 45-46. Clearly, these records belie the plaintiff's allegations that he was punched and kicked.

Finally, the undersigned notes that in his response to the defendants' Motion to Dismiss/Summary Judgment, he admits that he told defendant Hunt that he was a "faggot ass bitch," but denies ever threatening any of the staff. ECF No. 124 at p. 4. The plaintiff also admits that on the morning of October 8, 2015, he was using fishing line to pull stamps into his cell. Id. at p. 3. The plaintiff also alleges that the makeshift knife did not belong to either himself or his cellmate and appears to allege that the officers "put it together real fast." Id. at p. 4.   The plaintiff gives more detail to the actions taken by the various defendants when he was moved to the larger holding cell and placed in a paper gown and restraints. However, these allegations were not included in his prior pleadings. The plaintiff also, for the first time, alleges that the Lieutenants squeezed the cuffs tighter during "cell" checks. Id. at 6.  However, "[a]t the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed R Civ. P. 15(a). A plaintiff may not amend her complaint through argument in a brief opposing summary judgment." Barclay White Skanska Inc. v.

---

[6] The iliac crest is the most prominent part of the ilium, the largest of the three bones make up the hip bone, https://www.medicalnewstoday.com/articles/319695.php

Battelle Memorial Institute, 262 Fd. Appx. 556, 563, 2008 WL 2385622 (4th Cir. January 29, 2008) (citations omitted).  Finally, the plaintiff notes the multiple times that the defendants admitted using force.

The undersigned finds that the weight of the evidence establishes that the defendants employed a "rational reaction and measured response to the plaintiff's behavior on October 8, 2015, and undermines his assertion that he was the victim of excessive force. Stanley v. Hejirika, 134 F.3d 629, 634 (4th Cir. 1998).   To the extent that force was applied, the undersigned finds that it was in a good-faith effort to maintain or restore discipline and not maliciously and sadistically to cause harm. Moreover, the undersigned finds that there is no evidence from which a fair minded jury could return a verdict for the plaintiff on the issue of excessive force, and summary judgment should be granted to the defendants on this issue.

### C.  Deliberate Indifference

In his amended complaint, the plaintiff makes a general allegation that he did not receive adequate medical care after he was placed in ambulatory restraints. His allegation reads simply: "I was strip[ped] an[d] placed in white paper gown with restraints extremely tight to hands, ankles and waist with no medical treatment or care and was denied any help or care overnight." ECF No. 51 at p. 9. In describing how he was injured and the exact nature of his damages, the plaintiff states: cuts and [bruises] from restraints [and] nerve damage in hands no medical [at]tention while at Hazelton at that time." ECF No. 51 at 9.

The Eighth Amendment protects prisoners from punishments which "'involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the severity

of the crime." Rhodes v. Chapman, 452 U.S. 337, 346 (1981). These principles apply to the conditions of confinement and require that the conditions within a prison comport with "contemporary standard[s] of decency" to provide inmates with "the minimal civilized measure of life's necessities." Id. at 347; See also Farmer v. Brennan, 511 U.S. 825, 832 (1994) (explaining that both the treatment of prisoners and the conditions of their confinement are subject to scrutiny under the Eighth Amendment).

To establish a violation of the Eighth Amendment with respect to medical care, an inmate must prove two elements. See Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). First, the inmate must objectively prove that the deprivation of medical care was "sufficiently serious." Id. Second, the inmate must subjectively prove that prison staff acted with a "sufficiently culpable state of mind." Id.

The objective element is satisfied by proof of the inmate having a serious medical need. Id. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990). A serious medical need can also exist if a delay in treatment would cause a life-long handicap or permanent loss. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987)

The subjective element is satisfied by showing deliberate indifference by prison staff. Johnson, 145 F.3d at 167. The Fourth Circuit has summarized what constitutes deliberate indifference:

> To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness. Deliberate indifference may be

> demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. Nevertheless, mere negligence or malpractice does not violate the eighth amendment.

Miltier v. Beorn, 896 F.2d 848, 851-52 (4th Cir. 1990) (citations omitted). Furthermore, so long as the medical treatment given is adequate, the fact that an inmate would have preferred a different type of care does not constitute deliberate indifference. Chance v. Armstrong, 143 F.3d 698, 703 (2nd Cir. 1998).  Similarly, the fact that other medical professionals would have pursued a different type of treatment does not, by itself, establish deliberate indifference. Hanson v. Smith, 9 F.3d 1557 (10th Cir. 1993).

In the instant case, the plaintiff does not identify any individual who he asserts failed to provide him medical care. However, in the style of the case, he names Medical Staff Sines and Medical Staff Myers.

Christopher Meyer is a physician assistant, who has been employed by the United States Public Health Service ("PHS") since August 3, 2012. ECF No. 114-13 at p. 1. A Public Health Service employee is absolutely immune from personal liability "for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct." Hui v. Castaneda, 559 U.S. 799, 805-06. See also Townsend v. Azumah, No. 1:10cv123, 2012 WL 3839413, at *4 (N.D.W. Va. Sept. 5, 2012) (citation omitted) ("It is clear beyond peradventure that 'PHS officers and employees are not personally subject to Bivens actions' for performing a medical or related function in the course of their employment"). Therefore, defendant Meyer is absolutely immune from liability, and he is entitled to be dismissed from this case.

The only other medical defendant named by the Plaintiff is Wanda Sines, who is a registered nurse at USP Hazelton. Aside from naming her as a defendant, the Plaintiff makes no specific factual allegation against her in his amended complaint. Instead, he simply states that he received no medical care or treatment and was denied any help or care overnight.  Bivens liability is purely personal based specifically and exclusively upon an individual's own conduct. Trulock v. Freeh, Such general allegations cannot support a Bivens claim against defendant Sines. Moreover, the BOP records directly contradict the plaintiff's allegations that he suffered nerve damage and cuts and bruises because he did not receive adequate medical care after he was restrained following the alleged excessive force.

The plaintiff was placed in ambulatory restraints from approximately 10:35 AM on October 8, 2015, until approximately 7:30 AM on October 9, 2015. ECF No. 114-7 at p. 2, ¶ 8. When an inmate is placed in ambulatory restraints, qualified health personal initially assess the inmate to ensure appropriate breathing and response and to ensure that the restraints have not restricted or impaired the inmate's circulation. Id. ¶ 10.

On October 8, 2015, at 10:45 AM, D. Longo, a registered nurse, conducted an initial assessment of the plaintiff after he was placed in ambulatory restraints. He was ambulatory, alert and oriented. He appeared in good health. Nurse Longo noted that he had an abrasion on his right shoulder. In addition, the plaintiff had circulation, mobility and sensation in each of his arms and legs. Id. at ¶ 11, ECF No. 114-7 at p. 38. At 12:15 PM, Nurse Longo again noted that the plaintiff had circulation, mobility and sensation in each of his arms and legs. No new injuries were observed or reported. Finally, Nurse Longo noted that the plaintiff appeared well and without distress. ECF

No. 114-7 at p. 38. At 4:00 PM, the plaintiff was examined my M. Hoover, who found

that the plaintiff had circulation, mobility and sensation in each of his arms and leg and

appeared well. ECF No. 114-7 at p. 39. Finally, at 9:00 PM, defendant Sines examined

the plaintiff. She, too, found that the plaintiff had circulation, mobility and sensation in

each of his arms and legs. In addition, she noted that he appeared well with no

respiratory distress. She did note that his handcuffs were tight with some swelling

bilaterally. They were repositioned for better circulation. Id.

  As noted infra in the analysis of the plaintiff's claim regarding excessive force,

medical staff conducted an injury assessment on October 8, 2013, at approximately

11:23 AM. The plaintiff reported pain in his lower back, which he described as an

exacerbation of chronic lower back pain. He rated his pain as a four out of ten. He had a

small abrasion on his right shoulder. No other injuries were observed, and the plaintiff

specifically denied any other injuries. ECF No. 114-7 at pp. 41-42. The plaintiff was

again assessed after the restraints were removed on the morning of October 9, 2015.

The plaintiff reported that his side hurt and that he had a welt near his right hip due to

the belly chain portion of his restraints. The plaintiff again rated his pain as a four out of

ten. Staff did observe two bruises near his right hip. However, the abrasion on his right

shoulder was unchanged. The plaintiff did not report any other complaints or

complications. He was specifically told to seek additional medical attention as

necessary. ECF No. 117-7 at pp. 45-46.

  In the SHU at USP Hazelton, medical staff members make daily rounds between

5:00 AM and 6:00 AM. Should any inmate have a medical concern, he can report it to

staff as they make their rounds, and this request would be reflected in the inmate's

medical records. The plaintiff's medical records indicate that he never requested medical attention during the remainder of his incarceration at USP Hazelton. ECF No. 114-7, pp. 4-5, ¶¶ 16, 17.

Clearly, the evidence presented by the defendants, and which has not been contradicted by the plaintiff, establishes that the plaintiff did not suffer from a serious medical need. Furthermore, there is no indication that any defendant, named or unnamed was indifferent to any of the plaintiff's medical needs. Therefore, the plaintiff's allegation that he was subjected to deliberate indifference is due to be dismissed.

### D.  False Disciplinary Report

The plaintiff appears to allege that defendant George filed a false incident report charging him with Prohibit Act Codes 203[7] and 208[8]. Under the description of the incident, defendant George wrote:

> On October 8, 2015, at approximately 10:30 AM, I, T. George was walking off Range I after conducting a cell search of cell 104 which housed inmates Compton, Trae Reg # 26710-057 and inmate [ ] both inmates were placed in the SHU holding cells at the end of the range. Inmate Compton was verbally threatening me with bodily harm "saying this won't be the last you see of me, I got something for your ass when I get out." Inmate Compton continued to move his hand restraints from behind his back to the front of his body and forcefully tried to slip his hands from them where he continued to threaten staff. I then notified SHU Lieutenant of the situation.

ECF No. 114-2 at p. 6.

 "The purpose of <u>Bivens</u> is to deter individual federal officers from committing constitutional violations." <u>Corr. Servs. Corp. v. Malesko</u>, 534 U.S. 61, 70 (2001). Even if

---

[7] Prohibited Act 203 is "threatening another with bodily harm or any other offense."

[8] Prohibited Code 208 is "possession of any unauthorized locking device, or lock pin, or tampering with or blocking any lock device, including keys), or destroying, altering, interfering with, improperly using, or damaging any security device, mechanism, or procedure.

defendant George filed a false disciplinary report, the plaintiff does not have a constitutional right to be free from false disciplinary reports. "The act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights." Lewis v. Viton, No. 07-3663, 2007 WL 2362587, at *9 (D. N.J. Aug. 14, 2007) (citing Freeman v. Rideout, 808 F.2d 949, 962-53 (2d Cir. 1986)). There simply is no constitutional right to be free from being falsely accused. See McClay v. Fowlkes, No. 1:07cv1080, 2008 WL 3992637, *4 n.6 (E.D. Va. Aug. 27, 2008) ("To the extent the plaintiff claims that he was falsely accused, he fails to state a §1983 claim because '[t]he prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest.") (internal citations omitted); Anderson v. Green, No. 082708, 2009 WL 2711885 *4 (D. Md. Aug. 24, 2009); Riggerman v. Ziegler, No. 5:11-0868, 2012 WL 4119674, *5 (S.D. W.Va. Aug. 22, 2012) (inmates have no constitutional right prohibiting false charges against them). Accordingly, the plaintiff's assertion that he was falsely accused of misconduct fundamentally fails to identify any violation of a protected constitutional right.

Moreover, a federal inmate cannot seek monetary damages for an allegedly wrongful prison disciplinary proceeding unless he first successfully establishes that the disciplinary finding of guilt was reversed, expunged, invalidated, or undermined in a habeas proceeding. See Jamison v. Deboo, No. 1:11cv47, 2011 WL 10604777 * 7 (N.D.W. Va. Dec. 7, 2011, aff'd 471 Fed. App's 207 (4th Cir. 2012) (per curiam) (inmate claim for monetary damages for a "bogus" incident report was barred because the inmate had not had the disciplinary finding of guilt reversed, expunged, declared invalid,

or had a writ of habeas corpus issued by a federal court) (citing <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994); <u>Edwards v. Balisok</u>, 520 U.S. 641 (1997)).

### E.  Access to the Courts

An inmate's rights to access the court system is not unlimited. <u>Bounds v. Smith</u>, 430 U.S. 817 (1977). Instead an inmate is guaranteed "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts. <u>Id.</u> at 825. To establish that he was impermissibly denied access to the court system, an inmate must "demonstrate that a nonfrivolous legal claim has been frustrated or was being impaired." <u>Lewis v. Casey</u>, 518 U.S. 343, 351-53 (1996). In addition, the inmate must demonstrate some actual prejudice or injury resulting from the alleged inability to access the court system. <u>Id.</u>

In this instant case, the plaintiff does not indicate that he was denied access to the courts in his statement of claims. Rather, after naming various defendants, he indicates that they "knowingly, willfully, and intentionally interfered in [his] 5th Amendment due process to have access to the courts." ECF No. 1 at P. 2. This generic assertion, unsupported by any explanation of particular conduct cannot support his claim. Importantly, the plaintiff has not identified any viable legal action that was supposedly frustrated. Therefore, this claim is subject to dismissal.

### F.  STATE OF WEST VIRGINIA/UNITED STATES OF AMERICA

In the style of his amended complaint, the plaintiff listed the State of West Virginia as a defendant. He subsequently "amended" his complaint to name the United States of America. It is unclear whether the plaintiff is actually naming the State of West Virginia as a defendant or whether he is simply indicating that the individual defendants

are employees of the Department of Justice in the State of West Virginia. However, to the extent that he was attempting to name the State of West Virginia, it clearly is not subject to suit. Likewise, it is not clear whether the plaintiff added the United States in an effort to name it as an actual defendant or whether he was clarifying that the individual defendants are employees of the United States. However, to the extent that the plaintiff was seeking to name the United States as a defendant, it too is not subject to suit in a <u>Bivens</u> action because the purpose of a <u>Bivens</u> is to deter individual federal officers from committing constitutional violations. <u>Corr. Servs. Corp. v. Malesko</u>, 535 U.S. 61. 70 (2001). A <u>Bivens</u> claim may not be brought against a federal agency. <u>FDIC v. Meyer</u>, 510 U.S. 471, 486 (1994).

**G. "Amended Complaint" ECF No. 121**

On December 4, 2017, the plaintiff filed what purports to be an Amended Complaint. ECF No. 121.   In it, the plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. In addition, the plaintiff alleges that his "claims for injunctive relief are authorized by 28 U.S.C. §§ 2283 and 2284 and Rule 65 of the Federal Rules of Criminal Procedure. ECF No. 121 at p. 1.

A plaintiff may amend his complaint once as a matter of course within specified time limitations. Fed. R. Civ. P. 15. In all other cases, a plaintiff may amend his complaint only with the opposing party's written consent or permission from the court. This Court is empowered to deny a plaintiff permission to amend his complaint when the request to amend is unduly delayed and futile or unduly prejudicial to other parties in the case. <u>HealthSouth Rehabilitation Hosp. v. American Nat'l Red Cross</u>, 101 F.3d 1005, 1010 (4th Cir. 1996) (citing <u>Deasy v. Hill</u>, 833 F.3d 38, 40 (4th Cir. 1987). Specifically, the

Fourth Circuit found that a district court did not abuse its discretion in denying a plaintiff's request to amend his complaint where the plaintiff did not seek to amend his complaint until after the defendant filed a motion for summary judgment, having relied upon the original pleading to conduct discovery and draft its dispositive motion. Naden v. Saga Software, Inc., 11 Fed. App'x 381, 383 (4th Cir. 2001).

In the instant case, the undersigned has allowed the plaintiff to freely and repeatedly amend his complaint. See ECF Nos. 18, 23, 29, 32, 34, 49, 50, 51, 60, 84, 85, 88, and 105.  It would be prejudicial to allow the plaintiff to amend his complaint yet again after the defendants have filed their Motion to Dismiss or for Summary Judgment. Moreover, the contents of the plaintiff's latest amendment add no substance to his allegations against the defendants, but instead appears to seek a declaratory judgment that he was the victim of excessive force and requests unspecified injunctive relief. Given the analysis of the plaintiff's allegations of excessive force, and his failure to establish the same, he is clearly not entitled to declaratory judgment on that issue. In addition, given that the plaintiff is no longer incarcerated at USP Hazelton, any request for injunctive relief is moot.

## **RECOMMENDATION**

For the reasons stated above, it is hereby **RECOMMENDED** that Defendants' Motion to Dismiss or, in the alternative, Motion for Summary Judgment [ECF No. 113] be **GRANTED**, and Plaintiff's Complaint be **DISMISSED WITH PREJUDICE**. In addition, the undersigned recommends that the plaintiff's "Amended Complaint" [ECF No. 121] be construed as a Motion to Amend, and be **DENIED**, or in the alternative be **DISMISSED AS MOOT**.

Within **fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those  portions of the recommendation to which objections are made and the basis for such objections. A copy of any objections should also be submitted to the United States  District Judge. Failure to timely file objections to this recommendation will result in waiver of the right  to  appeal  from  a  judgment  of  this  Court  based  upon such  recommendation.  28  U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to send a copy of this Report and Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record by electronic means. In addition, because this Report and Recommendation completes the referral from the District Court, the Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case.

DATED: July 17, 2018


*/s. James E. Seibert*
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE